138

[969 NE2d 202, 946 NYS2d 86]

In the Matter of EYAL OVADIA et al., Appellants, v OFFICE OF THE INDUSTRIAL BOARD OF APPEALS et al., Respondents.

Argued March 20, 2012; decided May 1, 2012

**POINTS OF COUNSEL**

*D'Agostino, Levine, Landesman & Lederman, LLP,* New York City (*Bruce H. Lederman* of counsel), for appellants. I. It was an error of law to find HOD Construction Corp. and its owner liable as joint employers. (*Bynog v Cipriani Group*, 1 NY3d 193; *Zheng v Liberty Apparel Co. Inc.*, 355 F3d 61.) II. The determination made following the hearing was not supported by substantial evidence and was arbitrary and capricious. III. Any alleged guaranty violates the statute of frauds. IV. The Industrial Board of Appeals acted arbitrarily and capriciously in deciding the case based upon a joint employment theory which was never

raised by the Department of Labor. V. Practical realities of construction projects mandate reversal.

*Eric T. Schneiderman, Attorney General*, New York City (*Richard Dearing, Barbara D. Underwood* and *Leslie B. Dubeck* of counsel), for respondents. I. Under the Labor Law, a general contractor is a joint employer where economic realities show that the general contractor has "permitted or suffered" laborers to work. (*Rutherford Food Corp. v McComb*, 331 US 722; *Antenor v D & S Farms*, 88 F3d 925; *People ex rel. Price v Sheffield Farms-Slawson-Decker Co.*, 225 NY 25; *Miller v North Hudson Contr. Co.*, 166 App Div 348; *Nationwide Mut. Ins. Co. v Darden*, 503 US 318; *Falk v Brennan*, 414 US 190; *Barfield v New York City Health & Hosps. Corp.*, 537 F3d 132; *Matter of Aurecchione v New York State Div. of Human Rights*, 98 NY2d 21; *Matter of Fink v Lefkowitz*, 47 NY2d 567; *Chen v Street Beat Sportswear, Inc.*, 364 F Supp 2d 269.) II. Substantial evidence supports the Industrial Board of Appeal's determination that HOD Construction Corp. and its owner were, in economic reality, joint employers of the bricklayers. (*Matter of Ridge Rd. Fire Dist. v Schiano*, 16 NY3d 494; *300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176; *Matter of Stork Rest. v Boland*, 282 NY 256; *Matter of Berenhaus v Ward*, 70 NY2d 436; *Barfield v New York City Health & Hosps. Corp.*, 537 F3d 132; *Rutherford Food Corp. v McComb*, 331 US 722; *Zheng v Liberty Apparel Co. Inc.*, 355 F3d 61; *People ex rel. Price v Sheffield Farms-Slawson-Decker Co.*, 225 NY 25; *Balbuena v IDR Realty LLC*, 6 NY3d 338; *Patel v Quality Inn S.*, 846 F2d 700.)

*National Employment Law Project*, New York City (*Sarah Leberstein* and *Catherine K. Ruckelshaus* of counsel), for Mason Tenders' District Council of Greater New York and Long Island, amicus curiae. I. The Labor Law is a remedial statute that uniquely and broadly defines responsible "employers" to include employers who use contractors. (*Ansoumana v Gristede's Operating Corp.*, 255 F Supp 2d 184; *Lopez v Silverman*, 14 F Supp 2d 405; *Matter of Aurecchione v New York State Div. of Human Rights*, 98 NY2d 21; *Matter of Fink v Lefkowitz*, 47 NY2d 567; *Matter of Cromer [Transworld Sys.—Sweeney]*, 248 AD2d 773; *Rutherford Food Corp. v McComb*, 331 US 722; *A. H. Phillips, Inc. v Walling*, 324 US 490; *Tennessee Coal, Iron & R. Co. v Muscoda Local No. 123*, 321 US 590; *Nationwide Mut. Ins. Co. v Darden*, 503 US 318; *Secretary of Labor, United States Dept. of Labor v Lauritzen*, 835 F2d 1529.) II. Construction employers consistently and increasingly use subcontractors, and

many of these arrangements result in violations of basic wage and hour standards, so holding contractors accountable is important. (*Mendoza v Essential Quality Constr., Inc.*, 691 F Supp 2d 680; *Zheng v Liberty Apparel Co. Inc.*, 355 F3d 61; *Lopez v Silverman*, 14 F Supp 2d 405; *Itzep v Target Corp.*, 543 F Supp 2d 646; *Zavala v Wal-Mart Stores, Inc.*, 393 F Supp 2d 295; *Coke v Long Is. Care At Home, Ltd.*, 376 F3d 118; *Vizcaino v Microsoft Corp.*, 97 F3d 1187, 522 US 1098; *Falk v Brennan*, 414 US 190; *Asselta v 149 Madison Ave. Corp.*, 65 F Supp 385; *Hodgson v Arnheim & Neely, Inc.*, 444 F2d 609.)

## OPINION OF THE COURT

GRAFFEO, J.

The sole issue on this appeal is whether a general contractor acted as a joint employer of masonry workers, who were employed by one of its subcontractors, thereby owing unpaid wages to the subcontractor's workforce.

In 2006, a real estate developer hired HOD Construction Corp. (HOD) to act as general contractor for the construction of two multifamily residences in Queens. HOD entered into a subcontract with Well Built Construction Corp. (Well Built) for the masonry work on the project. Pursuant to the subcontracting agreement, HOD paid Well Built and, in turn, Well Built paid the wages of its workers. Well Built employed approximately 22 laborers, who worked various hours and brought their own tools to the job. The masonry workers were supervised by Well Built's principal, Martin Bruten, and another individual who allegedly worked as a foreman or supervisor for Well Built.[1] The owner of HOD, Eyal Ovadia, visited the work site several times a day but spoke only with Bruten or the foreman; he did not directly supervise Well Built's workforce.

Bruten periodically underpaid the laborers for the work they performed and, about three months into the project, he abandoned the job and ceased paying his workers. After Bruten failed to return to the job site, a group of masonry workers—most of whom spoke little English—arrived at HOD's headquarters demanding to be paid and threatening to leave the project. Ovadia spoke privately with one of the workers, Inocencio Reyes Navarrete, but there is now a dispute as to the content of that conversation and any representations made. Navarrete testified

---

1. It is unclear in the record who employed the individual referred to as "Anthony" but it appears that he was not employed by HOD.

before a hearing officer of the respondent Office of the Industrial Board of Appeals (the Board) that Ovadia told him "not to worry about it, that there are two floors that need to be finished, that keep working, that he [Ovadia] will pay us." Ovadia, on the other hand, stated that he did not promise to pay Well Built's workers but advised Navarrete that the workers needed to speak with Bruten. Ovadia further claimed that he made several attempts to reach Bruten by telephone but was unsuccessful.

Navarrete alleged that, following the conversation with Ovadia, he informed the other Well Built laborers that Ovadia agreed to pay their wages if they finished the job. Therefore, the laborers returned to the job site and continued to work on the project for another six days. On the seventh day, Ovadia hired a new masonry subcontractor with a different work crew, and Well Built's employees were removed from the site without payment.

Upon the filing of a claim for unpaid wages by the Well Built employees, respondent New York State Department of Labor (DOL) conducted an investigation and issued an order concluding that HOD assumed the status of an "employer" of Well Built's workers, as that term is defined in the Labor Law. DOL ordered HOD to pay over $117,000, which represented past-due wages covering the three-month period, including the six days the workers remained on the job after Bruten's departure, along with penalties and interest.[2] HOD sought administrative review and, after a hearing, the Board upheld the DOL's order, holding that HOD and Well Built jointly employed the workers. HOD and Ovadia then commenced this CPLR article 78 proceeding seeking to annul the Board's ruling. Upon transfer from Supreme Court, the Appellate Division confirmed the Board's determination and dismissed the petition (*Matter of Ovadia v Office of the Indus. Bd. of Appeals*, 81 AD3d 457 [1st Dept 2011]). We granted leave to appeal (17 NY3d 702 [2011]).

Labor Law § 190 defines the term "employer" as "includ[ing] any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service" (Labor Law § 190 [3]). An "employee" is described in the statute as "any person employed for hire by an

---

2. DOL also assessed the same sum against Well Built and Bruten. Neither Well Built nor Bruten appeared before the Board and they are not parties to this appeal.

employer in any employment" (Labor Law § 190 [2]). Further-more, to be "employed" under the Labor Law means that a person is "permitted or suffered to work" (Labor Law § 2 [7]).[3]

■ Despite these seemingly broad definitions, we have recognized that in the typical general contractor/subcontractor context, a general contractor is not an employer of its subcon-tractors' employees (*see Duda v Rouse Constr. Corp.*, 32 NY2d 405, 409 [1973]; *Sweezey v Arc Elec. Constr. Co.*, 295 NY 306, 310-311 [1946]; *see also Gambella v Johnson & Sons, Inc.*, 285 App Div 580, 581 [2d Dept 1955]). As a practical matter, general contractors in the construction industry do not hire or supervise the workers employed by their subcontractors; they do not usu-ally maintain the employment records for each worker or track the individual workers' schedules or rates of pay. The primary objective of a general contractor is to keep the project on sched-ule and to coordinate the work among subcontractors in order to avoid costly delays in the completion of the project. Thus, general contractors frequently interact with the principals and supervisors of the subcontractors and generally have no direct control or functional supervision over the employees performing work for the subcontractors.

Applying the federal six-factor test from *Zheng v Liberty Ap-parel Co. Inc.* (355 F3d 61, 72 [2d Cir 2003])[4] for considering whether the "economic reality" between entities in a given

3. An employment relationship is not the only means by which a general contractor such as HOD can become obligated to pay workers on a construc-tion site. Under the Lien Law, as a general contractor, HOD is the trustee of funds the developer transferred to HOD for payment to subcontractors and laborers working on the project (*see* Lien Law § 70 [1], [2]). Well Built's work-ers are the beneficiaries of that trust (*see* Lien Law § 71 [4]). The record does not indicate whether the Well Built laborers pursued relief under this provi-sion, which contains a one-year limitation period for commencing an action to enforce the trust (*see* Lien Law § 77 [2]).

4. The *Zheng* factors assess:
"(1) whether [the entity's] premises and equipment were used for the [laborers'] work; (2) whether the [subcontractor] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which [the laborers] performed a discrete line-job that was integral to [the entity's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [entity] or [its] agents supervised [the laborers'] work; and (6) whether [the laborers] worked exclusively or predominantly for the [entity]" (355 F3d at 72).

business relationship supports the theory of "joint employment," the Board concluded that HOD met certain factors supporting joint employer status.[5] In reaching that conclusion, however, the Board relied on several characteristics that, if applied consistently in the construction realm, would likely render most general contractors the joint employers of their subcontractors' employees—a proposition that does not reflect the actual relationships in the construction industry. For instance, the Board stated that HOD "provided the work site and materials used by the [workers] to perform" their tasks. But this is a common occurrence at construction sites. In most commercial construction projects, the architect or owner selects the materials to be used, then pursuant to the terms of the relevant contract, the general contractor, construction manager or subcontractor orders the materials from suppliers for delivery to the job venue. Such a usual occurrence at construction projects should not determine the nature of employment relationships.

The Board also emphasized that the unpaid laborers worked full time at the project for the duration of the three-month period that HOD contracted with Well Built to do the masonry work. It is difficult to see how this fact contributes to the conclusion that HOD was a joint employer since it is to be expected that a subcontractor's workers would continue working for the term of the contract. And it appears that the Board credited Ovadia's testimony, corroborated by the workers, that, although he frequently visited the work site, he did not give directions or instructions to the laborers but communicated only with Bruten or the foreman. Inasmuch as a general contractor is expected to

---

**5.** The Board does not argue that we should defer to its interpretation of the relevant statutes, nor is this a case where such deference would be appropriate (*see Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal*, 5 NY3d 303, 312 [2005]; *Matter of New York State Assn. of Life Underwriters v New York State Banking Dept.*, 83 NY2d 353, 359-360 [1994]). The Board's determination did not involve an application of any specialized "factual data" or draw on any "knowledge [or] understanding of underlying operational practices" (*Matter of Gruber [New York City Dept. of Personnel—Sweeney]*, 89 NY2d 225, 231 [1996]; *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]). Rather, its ruling involved a question "of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent" (*Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270, 285 [2009]; *Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006]; *Kurcsics*, 49 NY2d at 459) and its factual findings plainly indicate that HOD and Well Built engaged in a standard contractor/subcontractor relationship.

conduct routine quality control inspections and ensure that the coordination and sequencing of the work proceeds on schedule, this fact does not render the general contractor an employer of all workers at the job site. Hence, the Board erred as a matter of law in relying on these particular factors in reaching its determination of joint employment. Because the Board's factual findings indicate nothing more than that the usual contractor/ subcontractor relationship existed between HOD and Well Built during the three-month period that Bruten was on the job, we need not resort to federal precedent to resolve this issue. In any event, even were we to apply the *Zheng* test, we would hold that HOD was not a joint employer of Well Built's employees.[6]

Although we find evidence of a joint employment relationship lacking here during the period that Well Built was on the job, our holding should not be misconstrued as a conclusion that a general contractor in a construction setting can never be an employer of its subcontractor's employees. Certainly, there may be situations where the business relationship between a general contractor and a subcontractor supports the finding that the general contractor assumed the role of employer of the subcontractor's workforce.

Even in this case, an open question remains as to whether HOD became an employer of Well Built's laborers for the six-day period after Well Built and Bruten abandoned the project. In its decision, the Board acknowledged the conflicting testimony given by Ovadia and Navarrete as to the representations made during the conversation that occurred at HOD's office, but the Board did not indicate whose version it credited. We therefore remit to the Board for a determination of whether Ovadia made an enforceable promise to pay the workers for their continued work following Bruten's disappearance and whether the workers relied on his promise by continuing to work at the construction site for the following six days (*see generally Clifford R. Gray, Inc. v LeChase Constr. Servs.*, 51 AD3d 1169, 1170 [3d Dept 2008]; *Bunkoff Gen. Contrs. v Dunham Elec.*, 300 AD2d 976, 978 [3d Dept 2002]). If the Board concludes that Ovadia

---

6. That HOD "controlled" the premises of the construction site is not significant since a general contractor by definition must maintain such general oversight of the project. Further, as the *Zheng* court recognized, no single factor is dispositive and the courts must consider the "industry custom and historical practice" of a given industry (355 F3d at 73). In the construction industry the practice of subcontracting the various phases of the work is well-established and no evidence exists that it was implemented in order to avoid compliance with the provisions of the Labor Law (*see id.* at 74).

represented that he would pay the laborers' wages, then the provisions of Labor Law § 190 may apply and the Board could calculate the amount of unpaid wages earned during that time period, together with any applicable penalty and interest.

Accordingly, the judgment of the Appellate Division should be reversed, with costs, and the matter remitted to that court, with directions to remand to the Industrial Board of Appeals for further proceedings in accordance with this opinion.

Chief Judge LIPPMAN and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Judgment reversed, etc.