[37 NYS3d 571]

In the Matter of Universal Metal & Ore, Inc., Respondent, v Westchester County Solid Waste Commission et al., Appellants.

Second Department, September 21, 2016

### APPEARANCES OF COUNSEL

*Robert F. Meehan, County Attorney*, White Plains (*James Castro-Blanco, Linda M. Trentacoste* and *Justin Aden* of counsel), for appellants.

*Harold, Salant, Strassfield & Spielberg*, White Plains (*Leonard I. Spielberg* of counsel), for respondent.

### OPINION OF THE COURT

Cohen, J.

The petitioner, Universal Metal & Ore, Inc., is an international metal trading company founded in 1951, which maintains a facility in Mount Vernon. Essentially, Universal is in the business of purchasing scrap metal, and reselling it at a profit to other companies. The primary issue raised on appeal is whether Universal's Mount Vernon facility, where Universal accepts deliveries of scrap metal from independent dealers and stores it pending transport, may be considered a solid waste

"transfer station" under the Westchester County Solid Waste and Recyclables Collection Licensing Law (hereinafter the Solid Waste Law). For the reasons that follow, we conclude that Universal's facility is not a transfer station as defined by the Solid Waste Law, and that there was thus no rational basis for the Westchester County Solid Waste Commission's determination to fine Universal for operating a transfer station without a license.

Factual and Procedural Background

In 1999, the Westchester County Board of Legislators enacted the Solid Waste Law to regulate the collection and disposal of solid waste and recyclables in the county (*see* Laws of Westchester County ch 826-a; *American Ind. Paper Mills Supply Co., Inc. v County of Westchester*, 65 AD3d 1173, 1174 [2009]). The County Board's stated purpose was (1) to implement New York State's existing solid waste management policy, as declared in article 27, title 1 of the Environmental Conservation Law, and (2) to address the encroachment of organized crime into the solid waste disposal industry (*see* Laws of Westchester County § 826-a.101 [1] [a], [b]). The Westchester County Solid Waste Commission was created to implement and administer the Solid Waste Law (*see* Laws of Westchester County § 826-a.201).

Following enactment of the Solid Waste Law, Universal obtained a class E license from the Commission, and continues to pay an annual fee for that license. The Solid Waste Law defines "Class E" licensees as "haulers who exclusively conduct a scrap peddler business" (Laws of Westchester County § 826-a.200 [6A]). A "[s]crap peddler" is defined as "any person who collects scrap materials for sale to a recyclables broker using no more than one vehicle for collection and transportation of such materials" (Laws of Westchester County § 826-a.200 [19]).

During a standard inspection of Universal's facility on March 24, 2010, inspectors from the Commission noted that Universal accepted scrap metal from independent dealers, and they were advised that the scrap metal was stored on site for transport at a later time. Based on these observations, the inspectors informed Universal that it was required to pay a "transfer station" fee. On September 27, 2010, the Commission sent Universal a bill in the sum of $12,500. The amount represented the $20,000 annual transfer station fee (*see* Laws of Westchester County § 826-a.306 [2] [b]), which the Commission reduced by a recycling credit of $7,500, the largest recycling

credit available, since scrap metal transfer stations routinely reuse or recycle more than 75% of the metal that they accept (*see* Laws of Westchester County § 826-a.306 [2] [c]). Universal refused to pay the bill, and the Commission sent it a notice of violation assessing a $12,500 fine, directing Universal to cease and desist from operating a transfer station until the fine was paid, and directing it to appear before an administrative law judge for a hearing.

The Proceedings Before the Administrative Law Judge

When it appeared before the Administrative Law Judge (hereinafter the ALJ), Universal moved to dismiss the notice of violation on the ground that it did not operate a transfer station within the meaning of the Solid Waste Law. The ALJ set a briefing schedule for the motion.

In its brief to the ALJ, Universal noted that the Solid Waste Law defines a "transfer station" as a facility "where solid waste, garden and yard waste, recyclables and construction and demolition debris are received and transported off-site to a destination for final disposal" (Laws of Westchester County § 826-a.200 [27]). Universal argued that it did not operate a transfer station under this definition because the scrap metal it paid to purchase was not solid waste, and was sold to other businesses for reuse rather than "transported off-site to a destination for final disposal." Universal also emphasized that legislative history indicated that the County Board's purpose and intent in enacting the Solid Waste Law was to regulate the trash carting industry, which had been corruptly influenced by organized crime. However, Universal was not a trash hauler or carter that engaged in the corrupt practices intended to be addressed by the Solid Waste Law. Universal also pointed out that it did not deal with the public or the consumers of carting services, since it bought and sold metal only from and to businesses, and submitted that the Solid Waste Law was not intended to regulate its "business to business" operation.

The Commission responded in its brief by arguing that Universal was indeed operating a transfer station by accepting and storing scrap metal at its facility. In support of its position, the Commission contended that the scrap metal handled by Universal was solid waste because the statutory definition of that term included "nonputrescible materials . . . that are discarded or rejected as being spent, useless, worthless or in excess to the owners at the time of such discard" (Laws of Westchester County § 826-a.200 [22]). The Commission asserted

that the scrap metal handled by Universal came within this definition because it was nonputrescible material that was worthless or in excess to its owners at the time it was sold to Universal. Moreover, there was no language in the Solid Waste Law exempting scrap metal from its coverage. The Commission further submitted that the term "final disposal" as used in the definition of transfer station should be interpreted to include the movement of material from Universal's facility to any end user. In this regard, the Commission argued that the Solid Waste Law did not limit the term "final disposal" to require transportation of material to a landfill, incinerator, or another transfer station. The Commission also contended that since the concern of the Solid Waste Law was with the environmental management of the materials handled, it was irrelevant that Universal paid for the scrap metal received at its facility. The Commission concluded by pointing out that haulers must transport scrap metal to and from Universal's facilities, and that there was no proof that haulers of scrap metal were immune from corrupt influences.

In reply, Universal maintained that the sale of scrap metal was not equivalent to transporting it to a destination for final disposal, and that the Commission's interpretation of the term "final disposal" ignored its plain meaning. Universal further argued that the intent of the Solid Waste Law was to regulate waste collection and disposal, and not to penalize companies such as Universal, a business that does not collect waste, does not finally dispose of waste, and sells the material.

The ALJ's Decision

In a decision dated May 20, 2011, the ALJ recommended dismissing the notice of violation. The ALJ found that the fact that Universal pays for scrap metal and then resells it distinguished its facility from a typical transfer station, where the customer pays the transfer station to leave materials. Noting that the business model of Universal was to buy the scrap metal at a low price and presumably sell it at a higher price, the ALJ stated that Universal's facility operated less like a transfer station and more like a used car dealership, antiques store, or goodwill center. Additionally, the ALJ found that it was "difficult to see how licensure" of Universal's facility furthered the goal of the Solid Waste Law in protecting the public from the economic costs related to organized crime's influence in the waste industry.

The ALJ then examined the definition of transfer station as set forth in both the Solid Waste Law, and in the regulations of

the New York State Department of Environmental Conservation. The ALJ found that Universal's facility did not meet the definition of transfer station in the Solid Waste Law because it did not transport materials for "final disposal," which meant destruction of the materials. The facility was also not a transfer station as defined in the regulations because it did not receive solid waste for "the purpose of subsequent transfer to another solid waste management facility for further processing, treating, transfer or disposal" (6 NYCRR 360-1.2 [b] [172]). In view of the finding that Universal's facility was not a transfer station, the ALJ concluded that it was not necessary to determine whether scrap metal was solid waste.

The Commission's Determination

By order dated September 16, 2011, the Commission adopted the ALJ's findings of fact, but rejected his conclusions of law and recommendation, and determined that Universal's facility qualifies as a transfer station.

The Commission determined that scrap metal is a solid waste because businesses discard and reject it as spent, useless, worthless, or in excess "to the businesses at the time they discard or reject the materials." The Commission held that the fact that Universal pays for the scrap metal and then sells it does not alter this conclusion because the scrap metal was no longer in a condition to be used (i.e., spent), no longer needed because it was leftover material (i.e., in excess), or no longer needed (i.e., useless). The Commission noted that the definition of solid waste under the Solid Waste Law was broad, and included "garbage, refuse, commercial waste, rubbish, ashes, incinerator residue and construction and demolition debris" (Laws of Westchester County § 826-a.200 [22]). The definition did not specifically exclude scrap metals. Although "recyclables" were excluded, Universal admitted that "none of the metals it receives and handles fit within the limited definitions of recyclable metals in the [Westchester County] Source Separation Law" (see Laws of Westchester County ch 825).

The Commission found that interpreting the term "final disposal" to include only materials that would not be "further handled or used for any purpose" after being transported off-site was not supported by the Solid Waste Law's definition of the term "transfer station." The Commission opined that the inclusion of recyclables in the definition of "transfer station" revealed that the County Board intended the term "final disposal" to be interpreted broadly, since recyclables are moved

from transfer stations to facilities that reuse or process the recyclables for reuse and, by definition, recyclables are always handled once they leave a transfer station and are never disposed of.

The Commission found that it was clear that the term "final disposal" meant disposal of materials in the possession of the transfer station—i.e., that the transfer station would no longer possess the materials—not that the materials would no longer be handled or used for any purpose. The Commission also noted that the definition of transfer station in the Solid Waste Law was not limited by the definition contained in the New York State Department of Environmental Conservation's regulations (see 6 NYCRR 360-1.2 [b] [172]), and that the Solid Waste Law's definition was broader because it included recyclables.

Finally, the Commission found that even though the Report of Subcommittee on Trash Haulers to the Westchester County Board of Legislators, dated March 1999 (hereinafter the subcommittee report), did not specifically mention scrap metals and scrap metal transfer stations, the subcommittee intended for all solid waste and recyclables haulers to be investigated and licensed. The Commission noted that the scrap metal industry had been the focus of organized crime investigations in New York City. The Commission also observed that many of its enforcement activities occur at transfer stations, where many unlicensed companies haul solid waste and recyclables. By locating unlicensed companies and requiring them to become licensed, the Commission could obtain information necessary to comply with the goals of the Solid Waste Law. The Commission concluded that the County Board clearly intended for the Solid Waste Law to cover scrap metal yards.

Accordingly, the Commission determined that Universal violated the Solid Waste Law by operating a transfer station without a license, and that the fine was appropriately assessed. It directed Universal to remit $12,500, within 15 days, such sum representing the fee Universal was required to pay for the period of January 15, 2010 through January 14, 2011. It also directed Universal to remit an additional $12,500 for its transfer station fee for the period of January 15, 2011 through January 14, 2012. Finally, it directed Universal to cease and desist transfer station operations until after it obtained a license.

The CPLR Article 78 Proceeding

Universal subsequently commenced this CPLR article 78 proceeding to review the Commission's determination, contend-

ing that the determination was affected by an error of law or was arbitrary, capricious, and an abuse of discretion because it does not operate a transfer station as defined in the Solid Waste Law. The Commission moved to dismiss the petition pursuant to CPLR 3211 (a) (2) and (7), asserting that the facts of the case were not in dispute, and that its determination that Universal operated a transfer station as defined in the Solid Waste Law had a rational basis and was not arbitrary and capricious or affected by an error of law. It asked that, if the motion was denied, it be granted leave to serve and file an answer.

The Order and Judgment Appealed from

In an order and judgment entered September 14, 2013, the Supreme Court denied the Commission's motion to dismiss the petition, and granted the petition. The court held that because the facts were fully presented and undisputed, no prejudice would result from denying the Commission's request for leave to serve and file an answer, and determining the issue presented in the parties' submissions on the merits.

Turning to the merits, the Supreme Court concluded that the Commission's determination that Universal operated a transfer station was not reasonable under the ordinary, common meaning of the terms used in the Solid Waste Law. In reaching its conclusion, the court noted that discarded waste was something that is "thrown away" as "worthless or useless," but that scrap metal is neither of those things because Universal buys and resells it to other companies and industries who have a use for scrap metal. Thus, the court found that there is no rational view of the undisputed facts in this case that could support the Commission's determination that the scrap metal bought and sold by Universal was solid waste. Furthermore, the court determined that the only reasonable interpretation of "final disposal" was the last time that the subject material is discarded, as in a landfill or incineration facility. Under this interpretation, Universal did not engage in "final disposal" of waste, as all of its materials were sold to be reused. The court also noted that Universal did not contribute to the solid waste problem in Westchester County by buying and reselling scrap metal, and that its activities did not pose a threat to the environment or public health and welfare in the county. Accordingly, the court found that Universal's facility was not subject to the transfer station regulations as codified in the Solid Waste Law, and that it was entitled to the relief requested in its petition.

Analysis

Since the agency determination under review in this proceeding was not made after a quasi-evidentiary hearing, we review the determination to ascertain whether it "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]; *see Matter of Classic Realty v New York State Div. of Hous. & Community Renewal*, 2 NY3d 142, 146 [2004]; *Matter of Civil Serv. Empls. Assn. Inc., Local 1000, AFSCME, AFL-CIO v Westchester County Health Care Corp.*, 138 AD3d 741, 742 [2016]; *Matter of City of Mount Vernon v Cuevas*, 289 AD2d 674, 675-676 [2001]). In applying this standard, we note that interpretation of a statute by the agency charged with its enforcement is generally entitled to judicial deference "so long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing statute" (*Matter of Moran Towing & Transp. Co. v New York State Tax Commn.*, 72 NY2d 166, 173 [1988]; *see Matter of Trump-Equitable Fifth Ave. Co. v Gliedman*, 62 NY2d 539, 545 [1984]). "Ultimately, however, legal interpretation is the court's responsibility" (*Matter of Moran Towing & Transp. Co. v New York State Tax Commn.*, 72 NY2d at 173). Thus, where, as here, "the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency" (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]; *see Matter of Ovadia v Office of the Indus. Bd. of Appeals*, 19 NY3d 138, 144 n 5 [2012]; *Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270, 285 [2009]; *Matter of Anonymous v Molik*, 141 AD3d 162 [2016]).

According to the Plain Meaning and Applicability of the Statute, Universal is Not a Transfer Station.

Under the Solid Waste Law, "any licensee which owns, leases, operates or controls a transfer station which processes materials, including without limitation solid waste and/or recyclables" is required to pay an annual transfer station operators fee of $20,000 per transfer station operated, less any specific credit issued by the Commission (Laws of Westchester County § 826-a.306 [2] [b]). Section 826-a.306 (2) (c) of the Solid Waste Law provides for a credit in the sum of $7,500 where 76% to 100% of the materials processed are reused and/or recycled.

The term "transfer station," which is at issue on this appeal, is plainly and unambiguously defined by section 826-a.200 (27)

of the Solid Waste Law as a facility located in Westchester County: "where *solid waste*, garden and yard waste, recyclables and construction and demolition debris are received and transported off-site to a destination for *final disposal*, regardless of whether the materials are processed and regardless of the duration and frequency of operation of such facility" (emphasis added).

Although Universal holds a current class E license to operate a scrap peddler business, the Commission determined that it also operated a transfer station. Universal, however, argues that it did not operate a transfer station since it buys metal products, sells those same products to end users, does not pick up any scrap metal in Westchester County, and does not charge a fee to accept any product. In fact, Universal states, without opposition, that it pays for everything that comes into its facility. Moreover, Universal also states, again without opposition, that it does not pay to dispose of the metal it buys; rather, it sells all of its metal products, never sends any metal to a landfill or transfer station, and ultimately recycles 100% of all metal that passes through its facility. Therefore, Universal asserts that it does not finally dispose of the materials it handles.

The Commission contends that the term "final disposal" means the movement of material to any end user, and not just to a landfill, incinerator, or to another transfer station. Thus, once Universal transferred material from its facility, it became a transfer station. Universal disagrees with the Commission's position that final disposal only means that the transporter will not possess the material any further. On the contrary, Universal contends that the plain meaning of final disposal is that the material is not further handled or used for any purpose, and that based on that interpretation the transfer station fee should not be assessed on Universal's facility, as all of the materials handled by Universal are sold to be reused by the purchaser, and by definition, are not finally disposed.

The Solid Waste Law does not define the term "final disposal." However, as noted by the Supreme Court, Black's Law Dictionary (6th ed 1990) defines "final" as "[l]ast; conclusive; decisive; definitive; terminated; completed," and the Oxford English Dictionary (2d ed 1989) defines "final" as "not to be undone, altered, or revoked; conclusive."

The Commission urges that final disposal should be read to mean the movement of material "from [Universal's] facility to beyond its facility" or, simply, "to no longer possess." However,

this interpretation ignores the inclusion of the term "final," thus rendering the word "final" superfluous. This Court will not ignore the inclusion of the term "final," as "courts must give effect to the wording of a statute without rejecting any words as superfluous, and must harmonize related provisions in a way that renders them compatible" (*Matter of Ebanks v Skyline NYC, LLC*, 70 AD3d 943, 945 [2010]; *see Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington*, 97 NY2d 86, 91 [2001]; *Matter of William C.*, 64 AD3d 277, 283 [2009]). Indeed, it is well settled that " '[w]here the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used' " (*Independence Bank v Valentine*, 113 AD3d 62, 65 [2013], quoting *Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce*, 21 NY3d 55, 60 [2013]).

Since Universal does not transport its materials to any other site for final disposal, as all of its materials are reused or recycled, it cannot be said that Universal is operating a transfer station as defined under the Solid Waste Law. The term "final" has a clear and unambiguous definition which does not encompass Universal's use of the metal it processes. Indeed, we find that the Commission's attempt to ignore "final" in the clause "final disposal" to be an unsupported interpretation of the statute that runs counter to the clear language of the statutory definition. Accordingly, we find, as the Supreme Court also found, that the Commission's interpretation of the term "final disposal" is unpersuasive.

Furthermore, as previously noted, the statutory definition of transfer station applies only to facilities that receive "solid waste, garden and yard waste, recyclables and construction and demolition debris" (Laws of Westchester County § 826-a.200 [27]). Universal contends that its facility cannot be considered a transfer station because it receives only scrap metal, a material which is not included in the Solid Waste Law's definition of "solid waste," or defined anywhere else in the Solid Waste Law. The Commission maintains, however, that scrap metal falls within the statutory definition of "solid waste" because it is nonputrescible material that is worthless or "in excess" to its owners at the time it is discarded.

The term "[s]olid waste" is defined in section 826-a.200 (22) of the Solid Waste Law as,

> "all putrescible and nonputrescible materials or substances, except as described in Paragraph 4 of 6 NYCRR Part 360-1.2 (a), and/or regulated under 6 NYCRR Part 364, that are discarded or rejected as being spent, useless, worthless or in excess to the owners at the time of such discard or rejection including, but not limited to, garbage, refuse, commercial waste, rubbish, ashes, incinerator residue and construction and demolition debris. 'Solid waste' shall not be understood to include recyclables as defined in this chapter."*

In examining this statutory definition, this Court observes that scrap metal may be reused indefinitely—therefore, it is neither spent nor useless. Moreover, scrap metal has monetary value—consequently, it is neither worthless nor in excess to its owners which are in a business operating for profit.

We also note, as the Supreme Court pointed out, that the Institute of Scrap Metal Recycling Industries (hereinafter the ISRI) states that, "nonferrous metals, including aluminum, copper, lead, nickel, tin, zinc and others . . . have the capacity to be recycled an infinite number of times. In the United States alone, the value of the nonferrous metal scrap industry, including precious and rare metal scrap, approached $50 Billion in 2012" (ISRI Fact Sheet, The Scrap Recycling Industry: Aluminum, Copper, and Other Nonferrous Metals, Apr. 2013).

Finally, we note that although a facility that receives "recyclables" is also included within the Solid Waste Law's definition of transfer station, it is undisputed that scrap metal is not a recyclable. As conceded by the Commission, Universal does not deal in, or even handle, the materials defined as recyclables under section 825.30 (8) of the Westchester County Source Separation Law as "[a]ll ferrous and nonferrous food and beverage containers, including steel, aluminum and bimetal . . . [l]arge metal fixtures and appliances, including white goods such as washing machines, refrigerators, etc." (Laws of Westchester County § 825.30 [8] [d], [e]). In light of such concession,

---

* We note that the New York State Department of Environmental Conservation specifically excludes metal salvage facilities and scrap metal processors from New York State's Solid Waste Management Facilities regulations, codified as 6 NYCRR part 360 (*see* http://www.dec.ny.gov/chemical/8495.html). Rather, scrap metal processing facilities and scrap processors are to comply with General Business Law article 6-C §§ 69-E through 69-H and to obtain a license from the relevant municipal licensing authority. Additionally, scrap metal is also specifically excluded from New York State's Waste Transporter Permit rules, codified as 6 NYCRR 364.1 (e) (2) (vi).

no further statutory interpretation need be contemplated as to whether scrap metal is a recyclable.

Since scrap metal is, by definition, not a recyclable, and has an intrinsic value as a commodity, we agree with Universal's assertion that the materials it buys and sells are not solid waste, which is defined in the Solid Waste Law as material that is "spent, useless, worthless or in excess to the owners" (Laws of Westchester County § 826-a.200 [22]). We therefore hold that scrap metal is not solid waste, and that Universal's facility is not a transfer station because it neither receives solid waste, nor transports solid waste off-site for final disposal.

Intent of the County Board

It is undisputed, and explicitly codified in the Solid Waste Law, that one of the primary purposes of the County Board in passing the Solid Waste Law was to combat the pervasiveness of organized crime in the carting industry.

The Solid Waste Law states in section 826-a.101 (1) (b) that "[i]t is the intent of the Westchester County Board of Legislators to eliminate the influence of organized crime in the solid waste and recyclables collection industry; and, thereby, eliminate this significant problem and matter of public concern . . . from Westchester County." Additionally, a review of the subcommittee report reveals that, although scrap peddlers are accounted for in the Solid Waste Law, the scrap metal industry was not even mentioned in the subcommittee report. Universal contends that this is because the scrap metal business is not traditionally tied to organized crime and, therefore, that the Solid Waste Law was not enacted with the intention to regulate the scrap metal business. On the other hand, the Commission asserts that there is simply no proof that haulers of scrap metal were immune from corrupt influences, and thus not subject to the Solid Waste Law.

We agree with Universal that since the scrap metal business is not one normally associated with organized crime, as evidenced by the exclusion of the discussion of this industry in the subcommittee report, and because the County Board did not expressly include facilities solely dealing in scrap metal in the Solid Waste Law, that it was not the intent of the County Board to include scrap metal facilities as participants in the traditional solid waste and recycling hauling industry. Therefore there was no intent to regulate these facilities, other than as scrap peddlers, under the Solid Waste Law.

Further, as noted by the Supreme Court, one of the primary purposes of the enactment of the Solid Waste Law was to

"ensure that solid waste generated within the County is disposed of or recycled in an environmentally safe and sound manner" (Laws of Westchester County § 826-a.101 [1] [a] [2]). As this Court has determined that scrap metal is not solid waste, this statement cannot be said to apply to scrap metal. However, even if scrap metal were to be considered solid waste, the very nature of the material as a commodity which does not enter the waste stream, as it is continually reused, precludes the identification of a scrap metal facility as a threat to the environment or, as section 826-a.101 (1) (a) (1) states, "the general health, welfare and safety of the people of Westchester County."

Accordingly, based upon both the language of the Solid Waste Law and the legislative intent underlying its enactment, we conclude that the Commission's determination that Universal violated the Solid Waste Law by operating a transfer station without a license was based upon an unsupportable interpretation of the Solid Waste Law and, thus, was arbitrary and capricious and affected by an error of law (*see* CPLR 7803 [3]; *Matter of Classic Realty v New York State Div. of Hous. & Community Renewal*, 2 NY3d at 146; *Matter of White v County of Cortland*, 97 NY2d 336, 339 [2002]).

Finally, we find that under the circumstances of this case, the Supreme Court properly reached the merits of the petition without affording the Commission an opportunity to file an answer. CPLR 7804 (f) provides that where a respondent raises an objection in point of law by setting it forth in a motion to dismiss the petition, and the motion to dismiss is thereupon denied, "the court shall permit the respondent to answer, upon such terms as may be just" (*see Chestnut Ridge Assoc., LLC v 30 Sephar Lane, Inc.*, 129 AD3d 885, 887 [2015]). However, where, as here, "the facts are so fully presented in the papers of the respective parties that it is clear that no dispute as to the facts exists and no prejudice will result from the failure to require an answer" (*Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs. of Nassau County*, 63 NY2d 100, 101-102 [1984]), the court may reach the merits of the petition and award judgment in favor of the petitioner notwithstanding the lack of an answer (*see Matter of Baldwin Commons, LLC v Board of Assessors*, 128 AD3d 1062, 1062-1063 [2015]; *Matter of S & R Dev. Estates, LLC v Feiner*, 112 AD3d 945, 946-947 [2013]; *Matter of Rizvi v New York Coll. of Osteopathic Medicine of N.Y. Inst. of Tech.*, 98 AD3d 1049, 1051

[2012]; *Matter of Kuzma v City of Buffalo*, 45 AD3d 1308, 1310-1311 [2007]; *Matter of Laurel Realty, LLC v Planning Bd. of Town of Kent*, 40 AD3d 857, 860 [2007]).

Conclusion

The definition of a transfer station, as embodied in the Solid Waste Law, is clear and definite, and does not include scrap metal facilities such as Universal's. Additionally, scrap metal is not solid waste, it is a commodity, not subject to regulation by the Solid Waste Law. We therefore hold that the determination by the Commission that Universal violated the Solid Waste Law by failing to register and obtain a licence as a transfer station dealing in solid waste was arbitrary and capricious and affected by an error of law.

Accordingly, the order and judgment is affirmed.

DILLON, J.P., DICKERSON and DUFFY, JJ., concur.

Ordered that the order and judgment is affirmed, with costs.