Matter of Reardon v Global Cash Card, Inc. (2020 NY Slip Op 00187)





Matter of Reardon v Global Cash Card, Inc.


2020 NY Slip Op 00187


Decided on January 9, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 9, 2020

526973

[*1]In the Matter of Roberta Reardon, as Commissioner of Labor, Respondent,
v
Global Cash Card, Inc., Appellant, et al., Respondent.

Calendar Date: November 13, 2019

Before: Mulvey, J.P., Devine, Aarons and Pritzker, JJ.


Hinman Straub PC, Albany (David B. Morgen of counsel), for appellant.
Letitia James, Attorney General, Albany (Joseph M. Spadola of counsel), for Commissioner of Labor, respondent.



Devine, J.
Appeals (1) from an order and judgment of the Supreme Court (Debow, J.), entered May 31, 2018 in Albany County, which, among other things, granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Industrial Board of Appeals revoking 12 NYCRR part 192, and (2) from an order of said court, entered March 19, 2019, which, upon reargument, adhered to its original decision.
Labor Law article 6 "sets forth a comprehensive set of statutory provisions enacted to strengthen and clarify the rights of employees to the payment of wages" (Truelove v Northeast Capital & Advisory, 95 NY2d 220, 223 [2000]), and petitioner is authorized to adopt whatever regulations she deems "necessary for the purposes of carrying out the provisions of [that] article" (Labor Law § 199; see Labor Law § 21 [11]). Petitioner exercised that authority in 2016 by adopting 12 NYCRR part 192, which addresses how wages may be paid by cash, check, direct deposit or payroll debit card (see 12 NYCRR 192-1.1). The payroll debit card is "a card that provides access to an account with a financial institution established directly or indirectly by the employer, and to which transfers of the employee's wages are made on an isolated or recurring basis" (12 NYCRR 192-1.2 [a]). The regulations place a number of restrictions on the use of those cards to pay an employee, including that an employee must be made aware of his or her wage payment options and give informed, written consent to payment by card (see 12 NYCRR 192-1.3, 192-2.3 [a], [g]). The rules further prohibit the use of the cards unless, among other things, there is local access to an automated teller machine where no-cost withdrawals may be made from a card (see 12 NYCRR 192-1.2 [d]; 192-2.3 [b] [1]), and the employee is not charged fees for certain items relating to its use (see 12 NYCRR 192-2.3 [c]).
Respondent Global Cash Card, Inc., which provides payroll debit card services to employers, filed a petition with respondent Industrial Board of Appeals (hereinafter IBA) claiming that the portions of 12 NYCRR part 192 relating to payroll debit cards were "invalid or unreasonable" (Labor Law § 101 [2]). Upon a stipulated record, the IBA determined that petitioner had exceeded her rule-making authority and revoked 12 NYCRR part 192, prompting petitioner to commence this CPLR article 78 proceeding (see Labor Law § 102). Following joinder of issue and a motion by Global Cash to strike materials provided by petitioner that were not before the IBA, Supreme Court issued a May 2018 order and judgment that denied Global Cash's motion and granted the petition in its entirety. Global Cash then moved to, as is relevant here, reargue upon the ground that it was deprived of an opportunity to place its arguments regarding the scope and validity of the IBA's determination before Supreme Court. Supreme Court issued a March 2019 order in which it granted that part of the motion seeking reargument and, upon reargument, adhered to its original judgment. Global Cash appeals from both the May 2018 order and judgment and the March 2019 order.
Global Cash specified in its petition before the IBA that it was attacking 12 NYCRR 192-1.2 (d) and portions of 192-1.3 and 192-2.3, thereby waiving any other objections to 12 NYCRR part 192 (see Labor Law § 101 [2]). The IBA proceeded to issue a determination in which it failed to discuss all of the challenged provisions, addressed others that were not at issue and revoked "[t]he regulations regarding methods of payment of wages . . . codified as 12 NYCRR part 192" in their entirety. Inasmuch as the IBA struck down regulatory provisions to which any challenge was waived and failed to discuss others under actual attack, the determination lacked a rational basis and was arbitrary and capricious (see Matter of DeSousa v Town of Babylon, 170 AD3d 1172, 1173-1174 [2019]; see also Labor Law § 101 [3]).
Further, were we to accept Global Cash's argument that the IBA intended its determination to be limited to the actual provisions at issue, we are unpersuaded that the determination should be modified and upheld to that extent (see CPLR 7806). The IBA determined that petitioner had exceeded her "rulemaking authority [under the Labor Law] and encroach[ed] upon the authority of banking and financial regulators" by adopting 12 NYCRR part 192. Inasmuch as the IBA's "ruling involved a question of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent" (Matter of Ovadia v Office of the Indus. Bd. of Appeals, 19 NY3d 138, 144 n 5 [2012] [internal quotation marks and citation omitted]), we will not "defer to [the IBA's] interpretation of the relevant statutes" in discerning whether petitioner acted within her statutory authority (id.; see Matter of Angello v Labor Ready, Inc., 7 NY3d 579, 583 [2006]).
We accordingly undertake the inquiry first set forth in Boreali v Axelrod (71 NY2d 1 [1987]) to determine whether petitioner exceeded the legislative power delegated to her, which involves the consideration of factors such as: "whether (1) the agency did more than balanc[e] costs and benefits according to preexisting guidelines, but instead made value judgments entail[ing] difficult and complex choices between broad policy goals to resolve social problems; (2) the agency merely filled in details of a broad policy or if it wrote on a clean slate, creating its own comprehensive set of rules without benefit of legislative guidance; (3) the [L]egislature has unsuccessfully tried to reach agreement on the issue, which would indicate that the matter is a policy consideration for the elected body to resolve; and (4) the agency used special expertise or competence in the field to develop the challenged regulation[]" (Matter of NYC C.L.A.S.H., Inc. v New York State Off. of Parks, Recreation & Historic reserv., 27 NY3d 174, 179-180 [2016] [internal quotation marks and citations omitted]; accord Matter of LeadingAge N.Y., Inc. v Shah, 32 NY3d 249, 260-261 [2018]). Preexisting statutory guidelines are provided by Labor Law article 6, which regulates the payment of wages and vests petitioner with broad authority to "issue such rules and regulations as" are necessary to carrying out its provisions (Labor Law § 199). The challenged provisions of 12 NYCRR part 192 fill in the details of that statutory framework (see Matter of NYC C.L.A.S.H., Inc. v New York State Off. of Parks, Recreation & Historic Preserv., 27 NY3d at 183; Greater N.Y. Taxi Assn. v New York City Taxi & Limousine Commn., 25 NY3d 600, 611 [2015]), ensuring that an employer can only use payroll debit cards for the payment of wages when the employee consents to the deposit of wages in the account linked to the card (see Labor Law § 192 [1]; 12 NYCRR 192-1.2 [a]; 192-1.3, 192-2.3 [g]) and can promptly access his or her wages without fear of improper fees being deducted from them (see Labor Law §§ 191, 193; 12 NYCRR 192-2.3; Matter of Angello v Labor Ready, Inc., 7 NY3d at 584-585). Moreover, petitioner has special expertise and authority to ensure that employers pay their workers a full wage in a timely manner, and she was free to regulate employers in that sphere, notwithstanding the incidental effects the regulations might have upon financial institutions under the sway of other regulators (see Labor Law § 196, 199; see e.g. Boreali v Axelrod, 71 NY2d at 14-15).[FN1] The first, second and fourth Boreali factors accordingly weigh in petitioner's favor.
The IBA focused upon the third factor, pointing out that the Legislature had "attempted but failed to reach agreement on" the specific issue of wage payment via payroll debit cards (Matter of LeadingAge N.Y., Inc. v Shah, 32 NY3d 249, 265 [2018]). Those legislative attempts are not dispositive, however, as they died in committee and could easily be read as efforts to clarify petitioner's existing authority (see Matter of LeadingAge N.Y., Inc. v Shah, 32 NY3d at 265; Matter of NYC C.L.A.S.H., Inc. v New York State Off. of Parks, Recreation & Historic Preserv., 27 NY3d at 183-184). In contrast, petitioner has long taken the view that the wage payment protections of the Labor Law are applicable to payroll debit cards and similar payment methods, and that claim of authority over "a particular area for an extended time without any interference from the legislative body" is suggestive of legislative approval (Greater N.Y. Taxi Assn. v New York City Taxi & Limousine Commn., 25 NY3d at 612; see Garcia v New York City Dept. of Health & Mental Hygiene, 31 NY3d 601, 614 [2018]). This implicit approval is further reflected in the statements of individual legislators regarding the proposed provisions of 12 NYCRR part 192, almost all of whom discussed the wisdom of specific provisions rather than petitioner's authority to regulate in the area. The third factor of the Boreali analysis therefore favors petitioner's power to act and, upon consideration of the factors as a whole, we are satisfied that she was not "engag[ing] in legislative policy-making" by promulgating the challenged portions of 12 NYCRR part 192 (Matter of Dry Harbor Nursing Home v Zucker, 175 AD3d 770, 774 [2019]). Thus, the IBA's determination would fail even if it were limited to the issues actually before it.
Global Cash's remaining contentions have been examined and found to lack merit.
Mulvey, J.P., Aarons and Pritzker, JJ., concur.
ORDERED that the order and judgment is modified, on the law, without costs, by reversing so much thereof as denied the motion of respondent Global Cash Card, Inc. to strike an affidavit and affirmation submitted by petitioner; motion granted; and, as so modified, affirmed.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: We agree with Global Cash that Supreme Court should have struck proof regarding petitioner's consultations with financial regulators that was not part of "the record made before the" IBA (Matter of Levine v New York State Liq. Auth., 23 NY2d 863, 864 [1969]; see Matter of Pascazi v New York State Bd. of Law Examiners, 151 AD3d 1324, 1326 [2017]). The IBA's determination fails even in the absence of that proof, however, and its erroneous consideration by Supreme Court was harmless (see e.g. Matter of Hudacs v Kimmins Abatement Corp., 206 AD2d 803, 805 [1994]).