[49 NYS3d 18]

NATIONAL RESTAURANT ASSOCIATION, Appellant, v NEW YORK CITY DEPARTMENT OF HEALTH & MENTAL HYGIENE et al., Respondents.

First Department, February 10, 2017

### APPEARANCES OF COUNSEL

*Golenbock Eiseman Assor Bell & Peskoe LLP*, New York City (*S. Preston Ricardo, Jacqueline G. Veit, Elizabeth C. Conway* and *Alexander K. Parachini* of counsel), for appellant.

*Zachary W. Carter, Corporation Counsel*, New York City (*Aaron M. Bloom* and *Fay Ng* of counsel), for respondents.

*The Richman Law Group*, Brooklyn (*Kim E. Richman* of counsel), and *Public Good Law Center*, Berkeley, California (*Seth E. Mermin* and *Thomas Bennigson* of counsel), for American Heart Association and others, amici curiae.

### OPINION OF THE COURT

Gesmer, J.

Salt is both an essential ingredient of our diet and, when consumed in excess, may be a significant health hazard. Excess consumption of sodium can increase blood pressure, and is associated with a higher risk of cardiovascular disease, congestive heart failure and kidney disease, according to the overwhelming consensus among scientists and the government agencies charged with protecting the nation's health. To address this issue, defendant New York City Board of Health (the Board) adopted a rule requiring certain restaurants to provide factual information to consumers on this issue. That rule is challenged in this appeal by the National Restaurant Association (NRA). We affirm the trial court's rejection of that challenge, since the Board acted legally, constitutionally and well within its authority in adopting this limited yet salutary rule.

The Board is a division of defendant New York City Department of Health and Mental Hygiene (the Department), which is authorized to regulate all matters affecting health in the City of New York, including supervising the control of chronic disease and conditions hazardous to life and health (NY City Charter § 556 [c] [2]), and supervising and regulating the food supply of the city and businesses affecting public health in the city, and ensuring that such businesses are conducted in a manner consistent with the public interest (NY City Charter § 556 [c] [9]). The specific duties of the Board include adding to and altering, amending or repealing "any part of the health code," including by publishing in it "additional provisions for security of life and health" and "[embracing] in the health code

all matters and subjects to which the power and authority of the department extends" (NY City Charter § 558 [b], [c]).

On June 23, 2015, the Department published in the City Record a notice stating its intent to adopt a rule "to require food service establishments to warn diners about menu items containing high amounts of sodium." (City Rec, June 23, 2015 at 2432.) The notice set out the statement of purpose of the proposed rule, the text of the proposed rule, and the details of a public hearing to be held on July 29, 2015.

By July 29, 2015, the Board had received 94 written comments on the proposed rule, of which 90 supported it. At the public hearing, nine speakers made oral comments to supplement their written submissions. The NRA submitted both written and oral comments.

On September 9, 2015, after considering the oral and written comments, the Board adopted section 81.49 of the New York City Health Code (24 RCNY), entitled "Sodium warning," which became effective December 1, 2015 (the Rule). The Rule requires New York City food service establishments that are part of a chain operating 15 or more locations and offer substantially the same menu items at each location (Chain Restaurants) to post a salt shaker icon next to any food item or combination meal containing 2,300 mg or more of salt, and the following language explaining the icon's meaning: "the sodium (salt) content of this item is higher than the total daily recommended limit (2300 mg). High sodium intake can increase blood pressure and risk of heart disease and stroke" (24 RCNY 81.49 [b] [2]). The penalty for a violation of this section is a $200 fine, which became effective on March 1, 2016.

In its notice adopting the Rule, the Board made the following findings, all based on its own research or the comments received: cardiovascular disease is the leading cause of death in New York City; high blood pressure is a major risk factor for cardiovascular disease; the higher an individual's sodium intake, the higher the individual's blood pressure; the Federal Departments of Agriculture and Health and Human Services recommend that adults consume less than 2,300 mg of sodium per day; the average daily consumption of sodium among New Yorkers exceeds 3,200 mg; the vast majority of average dietary sodium intake is from processed and restaurant food; chain restaurants account for more than one third of all restaurant traffic in New York City; a considerable number of individual or combination items on chain restaurant menus have more

than 2,300 mg of sodium; and consumers typically underestimate the sodium content of restaurant foods.

The NRA is a business association representing approximately 500,000 member restaurants. Its members include more than half of the Chain Restaurants in New York City that would be affected by the Rule. On December 3, 2015, NRA filed a combined CPLR article 78 and declaratory judgment petition challenging the Rule, arguing that it intrudes on the legislative function and thus violates the separation of powers; that it is arbitrary and capricious; that it is preempted by federal law; and that it violates the First Amendment rights of plaintiff's members.

Turning first to the separation of powers argument, we note that there is no case that sets out a simple test for measuring whether action by an administrative agency intrudes on the legislative function. In *Boreali v Axelrod* (71 NY2d 1 [1987]), the Court of Appeals identified four "coalescing circumstances" present in that case, which persuaded it "that the difficult-to-define line between administrative rule-making and legislative policy-making ha[d] been transgressed" (71 NY2d at 11). In *Matter of NYC C.L.A.S.H., Inc. v New York State Off. of Parks, Recreation & Historic Preserv.* (27 NY3d 174 [2016]), the Court of Appeals described those *Boreali* factors as:

> "whether (1) the agency did more than balanc[e] costs and benefits according to preexisting guidelines, but instead made value judgments entail[ing] difficult and complex choices between broad policy goals to resolve social problems; (2) the agency merely filled in details of a broad policy or if it wrote on a clean slate, creating its own comprehensive set of rules without benefit of legislative guidance; (3) the legislature has unsuccessfully tried to reach agreement on the issue, which would indicate that the matter is a policy consideration for the elected body to resolve; and (4) the agency used special expertise or competence in the field to develop the challenged regulation" (*id.* at 179-180 [internal quotation marks and citations omitted]).

The Court of Appeals has emphasized that the *Boreali* factors are not to be applied rigidly (*NYC C.L.A.S.H.*, 27 NY3d at 179-180; *Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene*, 23 NY3d 681, 696-697 [2014]). Indeed, they

"are not mandatory, need not be weighed evenly, and are essentially guidelines for conducting an analysis of an agency's exercise of power" (*Greater N.Y. Taxi Assn. v New York City Taxi & Limousine Commn.*, 25 NY3d 600, 612 [2015]). Rather,

> "[a]ny *Boreali* analysis should center on the theme that 'it is the province of the people's elected representatives, rather than appointed administrators, to resolve difficult social problems by making choices among competing ends.' The focus must be on whether the challenged regulation attempts to resolve difficult social problems in this manner. That task, policymaking, is reserved to the legislative branch" (*Statewide Coalition*, 23 NY3d at 697 [citation omitted], quoting *Boreali* at 13).

■ Here, the Rule does not attempt to solve a social problem by choosing between competing ends; rather, it attempts to give consumers information which will make them better able to make their own nutritional decisions. Thus, consideration of the first *Boreali* factor weighs strongly in favor of deferring to the Department's adoption of the Rule. In fact, as the Court of Appeals explained in *Statewide Coalition*, instruction about health risks is the least intrusive way to influence citizens' decision-making, and, "[i]n such cases, it could be argued that personal autonomy issues related to the regulation are nonexistent and the economic costs either minimal or clearly outweighed by the benefits to society, so that no policymaking in the *Boreali* sense is involved" (*Statewide Coalition*, 23 NY3d at 699).

All regulatory activity necessarily involves some degree of cost-benefit analysis; the question is the extent to which the agency's "value judgments entailed difficult and complex choices between broad policy goals—choices reserved to the legislative branch" (*id.* at 698). Adopting the Rule did not require the Board to make "value judgments" "entail[ing] difficult and complex choices between broad policy goals"; rather, in this case, "the connection of the regulation with the preservation of health and safety is very direct, there is minimal interference with the personal autonomy of those whose health is being protected, and value judgments concerning the underlying ends are widely shared" (*Statewide Coalition*, 23 NY3d at 699). Notably, the Rule does not restrict or even regulate what Chain Restaurants may offer for sale. In contrast, in *Statewide Coalition*, which rejected the Board's

authority to enact the "Portion Cap Rule" prohibiting certain food service establishments from selling sugary drinks in containers larger than 16 fluid ounces, the Court of Appeals found that the Board had made "value judgments" and, unlike here, restricted strictly what could be offered for sale.

Furthermore, the Rule is not a "regulatory scheme laden with exceptions based solely upon economic and social concerns," demonstrating "the agency's own effort to weigh the goal of promoting health against its social cost and to reach a suitable compromise" (*Boreali*, 71 NY2d at 11-12). The fact that this uncomplicated rule is applied to some but not all restaurants does not require a finding that the Board engaged in legislative policymaking, since the determination to apply the Rule to national fast-food Chain Restaurants is grounded in promoting public health. Indeed, the Rule applies to the same Chain Restaurants as the rule requiring the posting of the calorie content of menu items (Health Code § 81.50), which account for more than one third of all restaurant traffic in New York City. The Rule's provision that only national Chain Restaurants that offer "substantially the same menu items" at all franchises (Health Code § 81.49 [a] [2]) are required to comply makes effective administration of the Rule possible.[1]

This contrasts with our holding in *Garcia v New York City Dept. of Health & Mental Hygiene* (144 AD3d 59 [1st Dept 2016]), that the Board's determination to apply a rule requiring that children attending daycare centers be vaccinated against flu only to the larger childcare centers licensed by the Board was "further evidence[ ]" of improper policymaking (144 AD3d at 69). In that case, the challenged rule allowed covered centers to opt out of the rule by paying a fee, giving at least the appearance that the distinction was based on economic, rather than health, considerations. Here, the application of the Rule to large Chain Restaurants offering substantially the same menu items at all outlets is based on health considerations. As the Board's Notice of Adoption of the Rule notes, nearly one third of sodium consumed by Americans comes from restaurant food, and recent studies conducted in Philadelphia and New York City have shown, respectively, that the sodium content of meals sold in fast-food restaurants increased more than 23% between 1997 and 2010, and that 20% of meals in

---

1. The Department does not issue permits to retail food markets. Accordingly, contrary to NRA's claim, the fact that the Rule does not apply to retail food markets is both rational and unremarkable.

such establishments contain more than 2,300 mg of sodium. Moreover, to the extent that the Board considered the ability of the targeted Chain Restaurants to comply with the Rule and the Department's own ability to administer the Rule, we find that it did so within the acceptable bounds of an administrative agency's necessary authority to make cost-benefit analyses without crossing into legislative policymaking. An administrative rule that could not be complied with or administered would certainly fail as arbitrary and capricious.

In further support of its claim that the Department made prohibited value judgments, the NRA argues that the science behind the federal recommended daily sodium limit of 2,300 mg, and the conclusion that high sodium intake can increase blood pressure and risk of heart disease and stroke is controversial.[2] In support of its claim, plaintiff relies on two 2014 publications that have since been called into question by leading experts in the field because of methodological defects. In contrast, as defendants' expert points out,

> "the most rigorous observational study to date confirmed and documented the benefit of lowering sodium to levels below 2,300 mg per day . . . . In extended follow-up, . . . there was a significant decrease in risk of cardiovascular disease with decreasing sodium intake . . . . These data are consistent with the health benefits of reducing sodium intake to the 1500 to 2300 mg per day range in the majority of the population and are in agreement with current dietary guidelines."

The Centers for Disease Control and Prevention, American Heart Association (AHA), World Health Organization (WHO), and Academy of Nutrition and Dietetics (AND) all encourage reduction of sodium intake for good health.[3] Other organizations recommend even lower daily limits, with the WHO recommending below 2,000 mg per day and the AHA recommending

---

**2.** Plaintiff's commitment to this argument is undercut by the statement by its own representative at the public hearings on the Rule that "[o]ur members agree with the board that sodium reduction is important to the national discussion on health and wellness."

**3.** Ironically, one of plaintiff's experts is a former President of AND, which urges reduction of sodium intake to below the recommended daily limit of 2,300 mg.

no more than 1,500 mg per day.[4] In light of the consensus concerning the science behind the Rule, we reject plaintiff's argument that the Rule does not advance the social benefit asserted.

The second *Boreali* factor is whether the agency "wrote on a clean slate, creating its own comprehensive set of rules without benefit of legislative guidance," rather than engaging in the " 'interstitial' rule making that typifies administrative regulatory activity" (*Boreali*, 71 NY2d at 13). The legislature has given the Department broad authority to regulate restaurants "consistent with the public interest" in order to, among other things, control chronic diseases and exercise control over conditions affecting public health (NY City Charter §§ 556 [c] [2]; 558). Its broad authority to adopt rules to accomplish these goals is evident in its adoption of prior rules, without specific legislative guidance, requiring restaurants to take steps addressing public health, such as restricting the use of artificial trans fats (Health Code § 81.08), requiring that inspection grades be posted (Health Code § 81.51), and mandating that chain restaurants post the calorie contents of menu items (Health Code § 81.50). These rules have gone unchallenged in the courts of this state.[5] Here, in adopting the Rule, the Board "was not writing on a clean slate in the sense that it has always regulated" restaurants as necessary to promote public health (*Greater N.Y. Taxi Assn.*, 25 NY3d at 611).

The third *Boreali* factor is whether the challenged rule governs an area in which the legislature has repeatedly tried to reach agreement in the face of susbtantial public debate and vigorous lobbying by interested factions. Plaintiff has failed to show that the motion court erred in evaluating this factor. Specifically, plaintiff pointed to four bills. However, each was introduced in the New York State Legislature by a single legislator; each was referred to a committee and has received

---

4. The AHA is one of 14 organizations submitting an amicus brief on this appeal. Other amici include the American Medical Association, the New York Academy of Medicine, and the Medical Society of the State of New York. All of the amici concur with the Dietary Guidelines for Americans of the Federal Departments of Agriculture and Health and Human Services, which continue to recommend that adults consume less than 2,300 mg per day of sodium.

5. The calorie content rule was unsuccessfully challenged in the federal courts (*New York State Rest. Assn. v New York City Bd. of Health*, 556 F3d 114 [2d Cir 2009]), which dismissed the petition on the City's summary judgment motion, finding that the rule did not violate the plaintiff's First Amendment rights and was not preempted by the Nutrition Labeling and Education Act.

no further consideration; and none of them addressed sodium warning labels in restaurants.[6]

Plaintiff also argues that this factor weighs in its favor because the New York City Council considered, in 2011 and 2014, an amendment to the Administrative Code requiring restaurants offering "incentive items" for children to meet certain nutritional standards. However, on each occasion, the proposed legislation was sent to a committee, and no further action was taken, so there is no indication that it was the subject of vigorous debate. Moreover, this proposed legislation is not focused on sodium and does not involve warning labels. Furthermore, "[l]egislative inaction, because of its inherent ambiguity, affords the most dubious foundation for drawing positive inferences" (*NYC C.L.A.S.H.*, 27 NY3d at 184 [internal quotation marks omitted]).

Finally, the fourth *Boreali* factor, whether development of the challenged rule required expertise in the field of health, clearly weighs in defendants' favor, as discussed above.

Accordingly, we find that consideration of the *Boreali* factors indicates that defendants did not exceed their authority in adopting section 81.49 of the New York City Health Code.

■ The court also correctly found that the Rule, which compels commercial speech, does not violate the First Amendment (*see Zauderer v Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 US 626 [1985]; *National Elec. Mfrs. Assn. v Sorrell*, 272 F3d 104, 114 [2d Cir 2001], *cert denied* 536 US 905 [2002]). To the extent the required warning indicates that consumption of sodium higher than the total daily recommended limit is high sodium intake that can increase medical risks, as discussed above, the weight of the scientific evidence in the record shows that it is factual, accurate and uncontroversial. There is no merit to plaintiff's argument that *Zauderer* applies only where the purpose of the requirement is the prevention of consumer deception, and not in cases like this where the requirement is for the purpose of improving

---

**6.** A 2011 bill, which would have required sodium content labeling and a warning on items containing over 800 mg of salt, would have applied only to packaged foods, not foods sold for consumption on premises. A 2015 bill would have required chain restaurants to identify menu items containing more than 2,300 mg of salt with a salt shaker icon, but would not have applied to New York City. The third would have banned the addition of salt to any restaurant food, and the fourth would have prohibited restaurants from selling foods containing trans fats and would require menus to include calorie, fat, and sodium content information.

consumer knowledge about potential health risks (*see New York State Rest. Assn. v New York City Bd. of Health*, 556 F3d at 133).

In addition, the court correctly concluded that the Rule has a rational basis, and is not unreasonable, arbitrary or capricious. "Administrative rules are not judicially reviewed pro forma in a vacuum, but are scrutinized for genuine reasonableness and rationality in the specific context . . . . The challenger must establish that a regulation is so lacking in reason for its promulgation that it is essentially arbitrary" (*New York State Assn. of Counties v Axelrod*, 78 NY2d 158, 166 [1991] [internal quotation marks omitted]). Plaintiff argues that, because the Rule applies only to large fast-food Chain Restaurants, it is arbitrary and capricious. However, as discussed above, the Board made the Rule applicable to these Chain Restaurants based on health considerations and for the purpose of making the Rule possible to comply with and administer. Accordingly, this aspect of the Rule has a rational basis.

Plaintiff also argues that the Rule fails to meet its goal because a customer could order items separately, each of which does not by itself exceed 2,300 mg of salt, but when consumed together exceed the recommended daily salt limit. However, as plaintiff points out, federal law will soon require that these same Chain Restaurants make the sodium content of each menu item available. Accordingly, the same hypothetical customer can also determine the total sodium content of an a la carte order. Moreover, the fact that a regulation "attempt[s] to address part of a perceived concern . . . provides no basis for invalidating the regulation[ ]" (*Matter of New York State Health Facilities Assn. v Axelrod*, 77 NY2d 340, 350 [1991]).

■ Finally, for similar reasons as outlined in *New York State Rest. Assn.* (556 F3d at 123-131), the court properly found that the Rule is not preempted by federal law. The federal Nutrition Labeling and Education Act (NLEA) was enacted in 1990 "to clarify and to strengthen the Food and Drug Administration's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods" (HR Rep No. 101-538, 101st Cong, 2d Sess at 7, reprinted in 1990 US Code Cong & Admin News at 3336-3337; *see New York State Rest. Assn.*, 556 F3d at 118). Among other things, the NLEA requires the nutritional information labeling found on most foods purchased in grocery stores (21 USC § 343 [q]). Plaintiffs' claim that the NLEA

preempts the Rule is wrong for two reasons. First, the NLEA's preemption clause (21 USC § 343-1 [a]) "shall not be construed to apply to any requirement respecting a statement in the labeling of food that provides for a warning concerning the safety of the food or component of the food" (Pub L 101-535 § 6 [c] [2], 104 US Stat 2353, 2364 [1990] [21 USC § 343-1 note]; *see New York State Rest. Assn.*, 556 F3d at 123). Since the Rule at issue here constitutes a warning, it is expressly exempted from preemption. Second, in part because 21 USC § 343 (q) (5) (A) exempts food served in restaurants from federal labeling requirements pertaining to salt and other nutrients, states and localities "are not preempted from establishing, or put differently, are permitted to establish any requirement [for restaurants] for nutrition labeling of food that is *not identical* to the requirement of [21 USC § ] 343 (q)" (*New York State Rest. Assn.*, 556 F3d at 128 [internal quotation marks omitted]).

Accordingly, the order of the Supreme Court, New York County (Eileen A. Rakower, J.), entered February 26, 2016, deemed a judgment denying the petition, which challenged the Board's promulgation of the "Sodium Warning Rule," and dismissing the proceeding, should be affirmed, without costs.

SAXE, J.P., MOSKOWITZ, GISCHE and KAHN, JJ., concur.

Order, Supreme Court, New York County, entered February 26, 2016, affirmed, without costs.