Roman Catholic Diocese of Albany v Vullo (2020 NY Slip Op 03707)





Roman Catholic Diocese of Albany v Vullo


2020 NY Slip Op 03707


Decided on July 2, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 2, 2020

529350

[*1]Roman Catholic Diocese of Albany et al., Appellants,
v
Maria T. Vullo, as Superintendent of Financial Services, et al., Respondents, et al., Defendants. (And Another Related Action.)

Calendar Date: May 18, 2020

Before: Garry, P.J., Clark, Aarons, Pritzker and Colangelo, JJ.


Tobin and Dempf, LLP, Albany (Michael L. Costello of counsel), for appellants.
Letitia James, Attorney General, Albany (Laura Etlinger of counsel), for respondents.
Edward T. Mechmann, New York City, for New York State Catholic Conference, amicus curiae.



Colangelo, J.
Appeal from an order of the Supreme Court (McNally Jr., J.), entered January 10, 2019 in Albany County, which, among other things, granted a motion by defendants Superintendent of Financial Services and Department of Financial Services for summary judgment dismissing the complaints against them.
Plaintiffs — several religious organizations, a single individual and a construction company — collectively challenge a regulation of defendant Superintendent of Financial Services requiring that health insurance policies in New York provide coverage for medically necessary abortion services. The regulation specifically exempts "religious employers," a term defined in the regulation, from the coverage requirement (see 11 NYCRR 52.1 [p] [1]; 52.2 [y]). Plaintiffs challenge the regulation under the free exercise of religion, free speech, expression and association, and equal protection provisions of the US and NY Constitutions, certain statutory provisions and the separation of powers doctrine.
The Superintendent is empowered to promulgate regulations establishing "minimum standards" for, among other things, the "content and sale of accident and health insurance policies" offered in this state (Insurance Law § 3217 [a]). The Superintendent is authorized to, among other things, "prescribe" and "amend, in writing, rules and regulations and issue orders and guidance involving financial products and services, not inconsistent with," among other statutes, "the [I]nsurance [L]aw" (Financial Services Law § 302 [a]).[FN1] In 2013, in response to regulations implementing the Federal Affordable Care Act (see The Patient Protection and Affordable Care Act, Pub L 111-148, 124 Stat 119 [111th Cong, 2d Sess, Mar. 23 2010]) that required each state to identify a "base-benchmark" plan to guide required coverage of essential health benefits (45 CFR 156.100 [a], [b]; see 45 CFR 156.110 [a]), defendant Department of Financial Services (hereinafter DFS) developed a standard health insurance policy template, referred to as the "Model Language" (see Department of Financial Services, Accident and Health Product Filings, https://www.dfs.ny.gov/apps_and_licensing/
health_insurers/model_language). An insurance policy issued in accordance with the Model Language covered medically necessary abortions (see Department of Financial Services, Accident and Health Product Filings, Outpatient and Professional Services, at 6-7, https://www.dfs.ny.gov/system/files/documents/2020/04/
outpatient-and-professional-services.doc [last update Apr. 13, 2020]).
In April 2016, plaintiffs commenced the first of two actions against the Superintendent and DFS (hereinafter collectively referred to as defendants), as well as several of their health insurance companies,[FN2] seeking to invalidate certain provisions of the Model Language pertaining to medically necessary abortions. In this action for declaratory and injunctive relief, plaintiffs asserted that, based upon their religious beliefs, they hold "moral, ethical, conscience and religious" opposition to "the inclusion of coverage and funding of all abortions." Defendants moved to dismiss the complaint for failure to state a cause of action. Plaintiffs opposed, submitted an amended complaint [FN3] and cross-moved for injunctive relief (see CPLR 6311). In 2017, while the motions were pending, the Superintendent amended 11 NYCRR part 52 to make explicit that health insurance companies must provide coverage for "medically necessary abortions," with an exemption for insurance policies offered by "[r]eligious employers" (11 NYCRR 52.1 [p]; see 11 NYCRR 52.2 [y]).[FN4] Thereafter, plaintiffs commenced a second action, challenging the 2017 regulation. The complaint in the second action mirrored the amended complaint in the first action, except that it contained the additional claim that the regulation violated the separation of powers doctrine and rule-making provisions of the NY Constitution and did not assert the claim pursuant to the Religious Freedom Restoration Act. Supreme Court joined the two actions.[FN5]
After the two actions were joined, defendants moved to dismiss the complaints and plaintiffs cross-moved for an order granting summary judgment and a preliminary injunction. Supreme Court granted defendants' motion dismissing the complaints, finding that plaintiffs failed to meaningfully distinguish their federal and state religious, speech and association claims from those presented and rejected by the Court of Appeals in Catholic Charities of Diocese of Albany v Serio (7 NY3d 510 [2006], cert denied 552 US 816 [2007]) and, therefore, the principle of stare decisis "require[ed] dismissal of plaintiffs['] constitutional claims." The court further concluded that the amended regulation did not violate the separation of powers doctrine and that it was "not an improper delegation of legislative authority to [DFS]." Plaintiffs appeal.
We affirm. As an initial matter, plaintiffs contend that Catholic Charities of Diocese of Albany should not apply here because the nature of the conduct governed by the regulation at issue — medically necessary abortion procedures — is more morally and religiously offensive to them than the conduct upheld by the Court of Appeals in Catholic Charities of Diocese of Albany. In defense of the regulation at issue, defendants argue that the constitutional issues raised by plaintiffs were squarely addressed and rejected by the Court in Catholic Charities of Diocese of Albany, and that such decision is controlling and binding precedent that preempts de novo review by this Court. In essence, plaintiffs' position boils down to the argument that, based upon their religious beliefs, there is a fundamental difference between prescribing contraceptives and performing an abortion procedure. The crux of defendants' argument is that there is no substantive difference between an abortion and any other medically necessary procedure. Neither argument proves particularly satisfying: plaintiffs' position because when viewed through the dispassionate prism of judicial analysis, it amounts to a distinction without a legal difference, in addition to the fact that it would require this Court to enter the thicket of making a religious value judgment; and defendants' position because it ignores the twin realities that the contrary view is held with deep religious fervency and that this particular "medically necessary" procedure has been among the most divisive issues in our politics for several decades, despite the effort of the Supreme Court of the United States to put it to rest over 47 years ago (see Roe v Wade, 410 US 113 [1973]). The ultimate resolution of this issue may well lie in another arena, outside of our judicial purview.
Our recourse as judges, when confronted with this or any issue of such constitutional dimension, controversial or otherwise, is more straightforward — to apply neutral principles to the issue at hand and, through the rigors of judicial reasoning, arrive at a resolution of the specific controversy before us. Chief among such neutral principles, particularly for an intermediate appellate court, is stare decisis. That doctrine, when applied to the precise issues presented by this appeal, proves decisive here in determining the constitutional claims advanced by plaintiffs that were addressed and rejected by the Court of Appeals in Catholic Charities of Diocese of Albany.
At issue in Catholic Charities of Diocese of Albany was the validity of a provision of the Women's Health and Wellness Act (see L 2002, ch 554 [hereinafter WHWA]) that requires health insurance policies that provide coverage for prescription drugs to include coverage for prescription contraceptives (see Catholic Charities of Diocese of Albany v Serio, 7 NY3d at 518). The WHWA also provided an exemption from coverage for "religious employers" (Insurance Law § 3221 [l] [16] [E]), which exemption contains the identical criteria as the exemption applicable here (see 11 NYCRR 52.2 [y]). In that action, the Court of Appeals rejected each of the plaintiffs' federal and state constitutional challenges to the statute. As the constitutional arguments raised by plaintiffs here are the same as those raised and rejected in Catholic Charities of Diocese of Albany, Supreme Court properly concluded that they must meet the same fate by operation of the doctrine of stare decisis. "Stare decisis is the doctrine which holds that common-law decisions should stand as precedents for guidance in cases arising in the future and that a rule of law once decided by a court will generally be followed in subsequent cases presenting the same legal problem" (Matter of State Farm Mut. Auto. Ins. Co. v Fitzgerald, 25 NY3d 799, 819 [2015] [internal quotation marks and citations omitted]).
The overriding reason for such rejection — equally applicable in the instant case — was that the WHWA set forth a neutral directive with respect to prescription medications to be uniformly applied without regard to religious belief or practice, except for those who qualified for a narrowly tailored religious exemption (Catholic Charities of Diocese of Albany v Serio, 7 NY3d at 522-526). The same analysis applies to the regulation at issue here — a neutral regulation that treats, in terms of insurance coverage, medically necessary abortions the same as any other medically necessary procedure (see 11 NYCRR 52.1 [p] [1]). The factual differences in these cases are immaterial to the relevant legal analyses that are identical in both cases. In addition, the fact that a regulation is at issue here as opposed to a statute enacted by the Legislature in Catholic Charities of Diocese of Albany is of no moment, as it is well settled that a properly promulgated regulation is entitled to the same deference as a legislative act (see Raffellini v State Farm Mut. Auto Ins. Co., 9 NY3d 196, 201 [2007]). No compelling reason has been presented to this Court to depart from that holding.[FN6] Accordingly, Supreme Court properly dismissed plaintiffs' constitutional claims, which were addressed in Catholic Charities of Diocese of Albany, on the basis of stare decisis.[FN7]
Plaintiffs' challenge to the instant regulation on the ground that, in promulgating it, the Superintendent exceeded regulatory authority, was also properly rejected by Supreme Court. Plaintiffs argue that the regulation at issue, which they characterize as an "abortion mandate," violates the separation of powers and rule-making provisions of NY Constitution, article III, § 1 and NY Constitution, article IV, § 8. As the Court of Appeals has recognized, "[s]eparation of powers challenges often involve the question of whether a regulatory body has exceeded the scope of its delegated powers and encroached upon the legislative domain of policymaking" (Garcia v New York City Dept. of Health & Mental Hygiene, 31 NY3d 601, 608 [2018]). "The constitutional principle of separation of powers requires that the Legislature make the critical policy decisions, while the executive branch's responsibility is to implement those policies" (Matter of Dry Harbor Nursing Home v Zucker, 175 AD3d 770, 772-773 [2019] [internal quotation marks, brackets and citations omitted]). "As a creature of the Legislature, an agency is clothed with those powers expressly conferred by its authorizing statute, as well those required by necessary implication" (Matter of Acevedo v New York State Dept. of Motor Vehs., 29 NY3d 202, 221 [2017] [internal quotation marks and citation omitted]; see Matter of New York State Bd. of Regents v State Univ. of N.Y., 178 AD3d 11, 19 [2019]). To this end, "an agency can adopt regulations that go beyond the text of its enabling legislation, provided they are not inconsistent with the statutory language or its underlying purposes" (Garcia v New York City Dept. of Health & Mental Hygiene, 31 NY3d at 609 [internal quotation marks, brackets and citation omitted]). Thus, it is undisputed that the Legislature may delegate authority to an administrative body to, by regulation, determine the best methods for pursuing objectives articulated and outlined by legislation. However, "[i]f an agency promulgates a rule beyond the power it was granted by the [L]egislature, it usurps the legislative role and violates the doctrine of separation of powers" (Matter of LeadingAge N.Y., Inc. v Shah, 32 NY3d 249, 260 [2018]).
There is no rigid test to determine whether, in a particular case, an administrative agency has exceeded its authority. Because the boundary between proper administrative rulemaking and legislative policymaking is difficult to define, the Court of Appeals developed a set of factors or, in the words of that Court, "coalescing circumstances," to be used as a guide to determine whether the legislative branch of government has ceded its fundamental policy-making responsibility to an administrative agency (Boreali v Axelrod, 71 NY2d 1, 11 [1987]; see Garcia v New York City Dept. of Health & Mental Hygiene, 31 NY3d at 609-610; Reardon v Global Cash Card, Inc., 179 AD3d 1228, 1230-1231 [2020]; Matter of LeadingAge N.Y., Inc. v Shah, 153 AD3d 10, 16-18 [2017], affd 32 NY3d 249 [2018]). The Boreali factors include (1) whether the agency merely "balance[d] costs and benefits according to preexisting guidelines [or] instead made value judgements entailing difficult and complex choices between broad policy goals to resolve social problems," (2) whether the agency "wrote on a clean slate, creating its own comprehensive set of rules without the benefit of legislative guidance," (3) "whether the [L]egislature has unsuccessfully tried to reach agreement on the issue, which would indicate that the matter is a policy consideration for the elected body to resolve" and (4) "whether the agency used any special expertise or [technical] competence" in the development of the challenged regulation (Greater N.Y. Taxi Assn. v New York City Taxi & Limousine Commn., 25 NY3d 600, 610-612 [2015] [internal quotation marks, brackets and citations omitted]).
We agree with Supreme Court that an analysis of the Boreali factors weighs in favor of rejecting plaintiffs' challenge that the Superintendent exceeded regulatory authority in promulgating the regulation at issue here. The first Boreali factor is met by virtue of the fact that the instant regulation is based upon longstanding legislative and regulatory efforts to standardize and simplify health insurance coverages. The directive set forth in Insurance Law § 3217 (b) (1) that regulations promulgated pursuant to the statute ensure "reasonable standardization and simplification of [health insurance] coverages" undergirds a longstanding 1972 regulation that prohibits a health insurance policy from limiting or excluding coverage based on the "type of illness, accident, treatment or medical condition," except in several enumerated cases not applicable here (11 NYCRR 52.16 [c]). It necessarily follows from this non-exclusion directive — as well as the regulations issued in accordance with the Model Language provisions of the Affordable Care Act pertaining to surgical procedures (see 11 NYCRR 52.6, 52.7) — that any medically necessary surgery include "medically necessary" abortion procedures, as set forth in the regulation at issue here (see 11 NYCRR 52.1 [p] [1]). With regard to the second Boreali factor, rather than writing on a "clean slate" to create their "own set of rules without the benefit of legislative authority," defendants, by the instant regulation, made explicit what was implicitly mandated in Insurance Law § 3217 and the 1972 regulation — that insurance coverage of specific treatments and procedures must tend toward being inclusive rather than exclusive when medical necessity is present (see 11 NYCRR 52.6, 52.7, 52.16; see also Insurance Law §§ 4900 [a]; 4904).
With respect to the third Boreali "circumstance" relating to putative legislative efforts in an area embraced by the regulation, the mere fact that several futile legislative efforts were undertaken to either include or exclude coverage for medically necessary abortions does not support a finding of a separation of powers violation. Aside from the fact that the Legislature may decline to act for any number of reasons — including a judgment that further legislation is unnecessary in light of the current regulatory framework — here, the proposed bills never cleared their respective committees, a situation hardly indicative of the "vigorous debate" referred to in the third Boreali factor (National Rest. Assn. v New York City Dept. of Health & Mental Hygiene, 148 AD3d 169, 178 [2017]; see Matter of LeadingAge N.Y., Inc. v Shah, 32 NY3d at 265-266). Moreover, none of the bills mentioned by plaintiffs was introduced after the 2017 regulation at issue was promulgated (see Rent Stabilization Assn. of N.Y. City v Higgins, 83 NY2d 156, 170 [1993], cert denied 512 US 1213 [1994]). The presence of multiple unsuccessful bills on a subject within an agency's authority may well reflect a consensus that the law "already delegates to [the agency] the authority" to act on the matter (Matter of NYC C.L.A.S.H., Inc. v New York State Off. of Parks, Recreation & Historical Preserv., 27 NY3d 174, 184 [2016]; see Matter of National Rest. Assn. v Commissioner of Labor, 141 AD3d 185, 192 [2016]).
Finally regarding the fourth Boreali factor, we find that making the judgment to include medically necessary abortion procedures under the insurance coverage umbrella by promulgating the instant regulation was well within the expertise and competence of the Superintendent. Indeed, the Superintendent is charged by statute with the responsibility for standardizing health insurance coverages (see Insurance Law § 3217 [b] [1], [4]).
Thus, the "coalescing circumstances" set forth in Boreali weigh, on balance, in favor of sustaining the instant regulation. In short, the instant regulation makes explicit what is, at the very least, implicit in more general regulations unquestionably based upon statutory authority — that "medically necessary" procedures should be covered without regard to the underlying reason for them. The regulation at issue simply makes clear that one type of medically necessary procedure is within that broad legislative and regulatory ambit (see Financial Services Law §§ 202 [c]; 302 [a]; Insurance Law § 3217 [a]). We therefore agree with Supreme Court's finding that the Superintendent had the authority to promulgate the regulation at issue. As the court correctly found, the "promulgation of 11 NYCRR 52.1 (p) is derived from the above statutory mandates and thus is not an improper delegation of legislative authority to DFS." To the extent that we have not expressly discussed any of plaintiffs' remaining contentions, they have been considered and found to be without merit.
Garry, P.J., Clark, Aarons and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Insurance Law § 3221 sets forth the standard provisions that must be included in health insurance policies providing major medical or comprehensive-type coverage to be delivered or issued in New York.

Footnote 2: The insurance companies did not appear in the action.

Footnote 3: The amended complaint asserted a claim under the Religious Freedom Restoration Act of 1993 (see 42 USC § 2000bb et seq.).

Footnote 4: Plaintiffs do not contend on appeal that they qualify as "religious employers" for purposes of the exemption.

Footnote 5: Although Supreme Court maintained that these actions were consolidated, the court continued to use both captions and index numbers in the order on appeal (see e.g. Matter of Consolidated Edison Co. of N.Y., Inc. v New York State Bd. of Real Prop. Servs., 176 AD3d 1433, 1436-1437 [2019]).

Footnote 6: The challenged regulation does not violate plaintiffs' state statutory rights under the Human Rights Law or the Religious Corporation Law. Although the Court of Appeals in Catholic Charities of Diocese of Albany did not address these claims, this Court did in that case and rejected them, and its reasoning controls here (Catholic Charities of the Diocese of Albany v Serio, 28 AD3d 115, 136-137 [2006], affd 7 NY3d 510 [2006], cert denied 552 US 816 [2007]).

Footnote 7: Although the plaintiffs in Catholic Charities of Diocese of Albany did not assert an equal protection claim, the analysis and rulings of the Court of Appeals require rejection of that claim raised by plaintiffs here. The distinction between qualifying "religious employers" and other religious entities for purposes of the exemption is not a denominal classification (see 7 NY3d at 528-529), and the Court of Appeals expressly so stated. The distinction turns on the basis of a religious organization's activities and has a rational basis (see id. at 529).